All right, this is Guy Gentile versus Securities and Exchange Commission number 19-2252. Mr. Ford. Thank you. Mr. Moran, Your Honors, and may it please the Court, Adam Ford on behalf of Appellant Guy Gentile. And if I could reserve two minutes for rebuttal. Granted. Thank you. Your Honors, thank you for hearing us out this morning. My argument today is going to largely follow the structure of the briefing, which I think is the easiest way to get at the issues in this case. But I'm going to provide some additional color on this case in a little bit more detail to help us get to what I think is the right place. First off, the facts, because I really think that this really is a fact-given decision. The facts here really are unlike any other case. And here's what I mean. We have a situation where there is an SEC investigation into my client, which is purportedly under a formal order of investigation from 2012. As of 2014, the SEC is on the record testifying under penalty of perjury that they believed that they had evidence that Mr. Gentile was violating the security laws in his Bahamian broker dealer in 2014. In 2016, I received a call from the staff attorney dealing with the case. And this is obviously all in the record saying we're just about done with this investigation, but we'd like to talk to Gentile. And our response at that time, as it has been now for the past six years, is that we don't think this is a legitimate investigation. We don't think that you actually went and got a formal order of investigation because we don't think that you actually could get one because we don't think you have any evidence that he was violating the securities laws. Down in the Bahamas. Now, why do we think this? We think this because in 2014 and from 2012 to 2015, our client was cooperating with the SEC out of the Northeast Regional Office and the Department of Justice out of New Jersey, the Newark office. Throughout, we've had some litigation and Judge Hardiman, I think you may be a little more familiar with it. Sorry. All right. I licked my wounds. But but in all seriousness and all through that litigation, the SEC and the DOJ, I was in constant communication. They kept saying to me, you know, the guy's doing a great job. He's not doing anything wrong. They were well aware of what was going on in the Bahamas. At one point, there was a FINRA inquiry into the question. And here's sort of one critical point. The SEC purports to be investigating whether Guy Gentile and his broker dealer are improperly soliciting U.S. clients from the Bahamas. And that would make them be running a unregistered broker dealer. So to be clear. That's the issue here, right? Yeah, that's exactly right. That's exactly right. And so the law is quite clear. You can be an offshore unregistered broker dealer and you can service U.S. customers, but you're not permitted to solicit them. Right. My client is aware of that and he has not solicited clients in the U.S. So as I recall, about half his clients happen to be U.S. residents. Is that right? I think that's right. Yeah. And in fairness, because at the end of the day, you want this wrapped up, right? This can't go on forever. I mean, you have an outstanding, I think, sort of equitable claim to, you know, SEC needs to either make an action here or wrap it up, right? Yeah. And what's so unusual about this case in the posture and the legal arguments, right, one of the arguments of the SEC is saying, you can only challenge our investigation in the context of responding to a subpoena enforcement action, right? And that actually seems okay to me. I'm all right with that as a general principle. But in our case, they have subpoenaed Mr. Gentile three times, 2015, 16, 17, or 17, 18, three times. And each time I received a subpoena and I said, we're not responding. Bring a subpoena enforcement action so we can have this out because I don't think you have a legitimate formal order. They never bring a subpoena enforcement action. Well, they brought them against related parties, though. There was one against Mintrade, right? They did. And you were counsel in that case, right? I was, yes. You were pro hoc in that case. So, I mean, again, speaking only for myself, you know, it's certainly understandable why you don't want the cloud of a potential investigation or a real investigation hanging over your head indefinitely. But at the same time, there are things happening under this formal order of investigation. The Mintrade thing that went forward, the magistrate judge recommendation was just last July. I mean, in theory, you know, Mintrade and your client could have joint defense agreements. There are a lot of ways for you to try to find out what's going on here, absent an SEC subpoena enforcement action directly against your client. Isn't that right? You're not really in the dark completely. No, this is the thing. I'm having phone conversations with the SEC. Here's why. I genuinely don't believe it. I've been doing white-collar criminal defense and regulatory defense for almost 20 years. Generally, almost always, you know, regulators really act in good faith, and they've got investigations that are really in good faith. This one really strikes me as different, and here's why. I've had conversations with SEC counsel saying, look, they say, we think he's improperly soliciting U.S. clients because he has a website and people can access it. And I say, he's not soliciting because he's got appropriate pop-up blockers and he has not-for-U.S. clients and this isn't a solicitation. And so I said, it seems like this is almost sort of a legal issue, right? I'm not debating that he has U.S. clients. We're not debating what the website looks like. Bring your case, and let's argue out whether, in fact, he is violating the securities laws. By the way, he's been operating the broker-dealer. But it seems like a lot of what you're saying is designed to say that the SEC can do a better job investigating, a more reasonable job investigating. They can do all of those sorts of things. It's a complaint with their investigation. And I totally understand why your client may have a complaint with their investigation. But the question that brings you here is whether if you don't like how a federal agency is going about its investigation, can you maintain a separate suit under the APA or otherwise against that agency? And so you lead with the facts. You lead with the equities. I get that. But at the end of the day, your lawsuit begins not with so much the facts or the equities, but a waiver of sovereign immunity, and that's the first thing that you need. So why don't you say why something that is really left to agencies to do is that you have a valid waiver of sovereign immunity to proceed? Thank you very much. That's obviously the next and the bigger point. And before I get to it, just one last thing on my sort of complaints about how they're in this. The broker-dealer that we're talking about shuttered last year. So this investigation started in 2004. Which company was that? Well, it's SureTrade, also known as Mintrade. It's the same company. So Mintrade and SureTrade are closed. Okay. Yeah. It's the same entity. It just had a name change. But it's just one broker-dealer in the Bahamas that we're talking about. But so my case, just as sort of the final point, and then I'm going to talk about the APA, is that we're talking about this purported investigation that started in 2014. Statute of limitations ran on all of those claims from when they said he believed he was violating the laws. The broker-dealer is now shut down. Right? So he's certainly no longer soliciting U.S. clients. And the SEC is up here saying, hey, let us keep investigating. We want to keep figuring out if he's soliciting U.S. clients. So that's just sort of the finish of the facts. But with respect to the waiver of the APA, here's our view of things. Section 702 obviously allows individuals who are grouped by the government to bring a claim against an agency if it's non-monetary. Well, okay. 702 is a long paragraph. And you've summarized it. But your summary might take a little bit of a liberty because it identifies five specific actions that it defines. Well, it says agreed by agency action. Later in Section 551, agency action is defined to include only five specific items. I don't know if I can get them from memory, but it's adjudication, order, license, relief, and sanction. And investigation isn't any one of those five. So in order to get the waiver, you have to have validly identified agency action. The definition of agency action mentions only five specific types of agency action. And so in order to fall into the waiver, you would have to be challenging something along the lines of those five types of agency actions, not investigation. But the investigation, there's plenty of case law, and while it doesn't always go in the direction we want it to, the language is certainly there that individuals who are grieved by agencies, right, who are acting way outside the bounds, can come to federal court, even putting aside the APA. But they usually have other waivers. If they're aggrieved by tort, they come under the Federal Tort Claims Act waiver. If they're aggrieved by constitution or contract, they come under the Tucker Act. You're proceeding under the APA's Act, which delimitates only five types of agency actions. Right, and I think you think sanctions is one of them, is that correct? Yes, it is. Sanctions is one of them. One of the things that we have is that we have a situation where an agency is just endlessly sending out subpoenas to all of my clients, customers, clients, process servers. I would argue, in good faith, I believe the reason the broker-dealer eventually shuts down is because everyone stops doing business with them because they're constantly getting these subpoenas, and the SEC is going after them and not doing anything. So I think when you look at the language, and this will sort of tie back in to when the Administrative Procedures Act is passed back in 1946, this is right when federal agencies are sort of starting to get going and they're a new thing. There's a ton of discussion, both in the legislative history and the cases that are happening in the lead-up to that, and we point to two, Jones v. SEC, which is a 1936 case, and the Newfield v. Ryan case, which was from 1937. And you get the flavor that the APA, in fact, was enacted to protect individuals when agencies are running rush out over there. There's a lot of reasons for why, there's a lot of theories for why the APA was enacted. Some people think it's to curb the power of the administrative state, some people think it's to ratify the power of the administrative state. What we know, though, is that I think the 702 waiver wasn't part of the 1946 original creation of the APA, it came later. That is the argument in Sprechter v. Graeber, that is what the Second Circuit says. They say there was an amendment in 1976, and that's when that was first put in. I went to, and I apologize, I actually printed it, but I would ask your honors. When you go to the language of the APA from 1946, as it's originally enacted, although it does not have 701 and 702, it's a completely different provision, but the two subparts are absolutely in there. They say that it waives except for where it's been, the language is slightly different, but it's sort of where there's been, judicial review is explicitly addressed or precluded, except the language is slightly different, and when it's for agency discretion as a matter of law. So one of the things that I think has been going on in our country with this area of the law is the court in Sprecter v. Graeber. They say, hey, there was this big amendment in 1976, and so let's look at what's going on from there. I think they got it dead wrong, and I've seen it with my own eyes. The original act from 1946 has those same two points, and the two cases I was mentioning earlier, particularly the Newfield v. Ryan, this is 37, this is before the act, it's a Fifth Circuit case, the SEC subpoenas, I think it's a telegram company, and a non-recipient challenges it, and it goes to the district court, and it goes up to the Circuit Court, and while in that case the court wound up granting the subpoenas because they found they were proper, there's absolutely no discussion or suggestion that it was improper for the target who did not receive the subpoena to go and challenge it. And so therefore to say that when the APA was being enacted in 1946, everyone knew that the only way to challenge a subpoena was in an enforcement action, I really think that's historically incorrect. Well, regardless, I mean, don't you have to deal with the mid-80s decision of Heckler v. Cheney, which basically says decisions regarding whether to investigate or prosecute are matters committed to agency discretion by law, and therefore outside the way, I mean, that's the Supreme Court, that's after Sprechter, that's after an amendment or not, and this is an investigation or prosecution, and therefore it's committed to agency discretion, that's pretty tight. But this gets to the agency discretion point, which I think, I have also said to the SEC on numerous occasions, go get a formal order of investigation that actually reasonably relates to our client, because the one that you're working under this case- Well, they think the one they're working under does, don't they? Well, here, we'll find out in a minute. I have testimony from the Associate Regional Director of the SEC, and I think it was the Mint Trader for the Marin case, and I can read from it, but she basically says the reasonable relationship is not required. What happened was their investigation into Trader's Cafe, and everyone agrees that Trader's Cafe is a group of guys, I think they're in Florida, they are running an unregistered broker-dealer because I think they're stealing money from people. They have no idea who Guy Gentile is, Guy Gentile has no idea who they are, they're not using his broker-dealer for part of the scheme, completely unrelated. They just happen to have an account at Short Trader. And it's only open, and it's open in 2012 for a couple of months. And what the SEC, what they have argued in front of the court in Miami, is that opened the door to our investigation into Gentile. So they sort of agree, there's no reasonable relationship, and that's really the test, but that it's an opening the door. And what I said in our papers, and I think it's accurate, which is their argument is that if the SEC subpoenas an individual, rightfully so, under a formal order, the SEC can then go and investigate every financial institution, presumably every bank, everywhere where they have an account, they would be able to go and go off and investigate that. And I don't think that is what the commission actually intended. And so back to your point, Judge Phipps, that's right, the Supreme Court has said, it's in the commission's decision to investigate that, and we get that. And if they were to go and get a formal order of investigation, if they come forward and say, hey, we have evidence of a security, and we want to investigate Short Trader and Mintrade in the Bahamas, I would sit down. And I've said that to the SEC repeatedly. I would sit down. If you guys go and get the formal order, I don't have an argument. I'm knocked down on discretion. But that's what's so bizarre about all of the conduct here. And to get back to our original point, that's why I'm standing. And when we filed the lawsuit last year, it was, it really was this sort of, what are they doing? They keep saying he's violating securities laws, we're going to go forward. And then they just keep sending more subpoenas. And so in my client's mind, I think really reasonably so, there was a conclusion that this has to just be pure harassment. And not for nothing, without sort of disclosing my legal thoughts in my mind, but I assumed after I filed this lawsuit that they would, the SEC would either go get a formal order of investigation or file an enforcement action. Right. I mean, I was sort of pushing. I did not ever expect to be standing before your honors arguing about whether they can, whether they just go ahead and put. But we were OK with that because we were so confident that their legal theory about the solicitation of U.S. customers was wrong and that my client, in fact, was not doing anything wrong. Thank you, Mr. Ford. We'll hear you on rebuttal. Thank you, Mr. Ferguson. Good afternoon, I believe, your honors, and may it please the court. My name is Matthew Ferguson. I'm counsel, the defendant appellee of the United States Securities and Exchange Commission. Judge Linares and the district corporal properly dismissed Mr. Gentile's effort to use a New Jersey court to enjoin an ongoing SEC investigation being conducted by the Miami regional office of the commission. When did this investigation start? The formal order of investigation was entered in 2013. It's ridiculous. It's ridiculous. This is you're not investigating Bear Stearns or I mean, I'm not singling them out, but you're not investigating some big publicly traded brokerage house. These are these are, you know, you've got some guilty pleas, right? Traders Cafe. Yes. Well, we got guilty. They were both civil and criminal guilty. We didn't get the criminal guilties. You got civil. You got civil. I mean, it's ridiculous. But part of the problem, when are you going to when are you going to wrap this up? When we get the information that we need during the course of the investigation. So you really need the information you subpoenaed for Mr. Gentile. Is that what you're saying? We're saying that in order to conclude the investigation, we need to obtain the information that we did. Did you subpoena information for Mr. Gentile? We did. And did you get it? He has not. He has not replied. When did you subpoena it? We subpoenaed him in 2015. Originally. And you didn't try to enforce that subpoena. We did not. Then how could anyone who's rational conclude that you really need that information? What are you doing? Sometimes when we are faced with someone who is not responding to a subpoena investigation. Yeah, you bring them into court. And then a judge says you're going to go to jail if you don't respond. That's one option for us. We could do a subpoena enforcement action. So we have to our subpoenas aren't self-enforcing. So we'd have to go to a subpoena enforcement action to enforce that. But in addition, we How hard is that? It's not necessarily hard, but it's in our discretion. Dear Judge, we sent a subpoena on this date. He didn't respond. Please enforce the subpoena. How much time of the Security and Exchange Commission does that take? It's hard to tell depending on how the information plays out. So depending on what information we have and how the investigation proceeds, it takes differing amounts of time. In this situation, though, we're faced with not only Mr. Gentile, but his affiliates continuing refusing to respond. But your remedy is to bring an enforcement action. And those enforcement actions on their own, maybe bringing it motivates compliance. Because if someone loses an enforcement action, those penalties are pretty harsh. So if you bring an enforcement action, it sounds like, well, people are going to all of a sudden say, I'm not just going to stiff-arm them because they have no enforcement ability on their own. Once you're in there, I think the stakes go up. And so it's very strange for you to come and say, we need the information. You haven't said this, but it sounds like you say it's critical to our case. But we've never decided to raise the stakes, and we've never decided to take an enforcement action. And that raises deep questions. It is at our discretion when to bring a subpoena enforcement action or the substantive enforcement action. But I think it's a legitimate investigative tool. Is it in your discretion to investigate somebody indefinitely and have them labor under the cloud of an SEC investigation that never progresses because the lawyers are too lazy or incompetent to go in and file an enforcement action? It's in our discretion to follow the evidence where it leads and take the time it needs to complete the investigation. But you told us a minute ago you need the evidence from Gentile. That's why you subpoenaed him. Correct. But yet you're not taking any steps to try to get that. It's within your power to get that information. You walk into a court and you get it, and you haven't even tried to do that. Because prior to doing that. It's been over four years. Prior to doing that, we also can try to get that information from other sources. Well, let's just tease this out, though. I mean, if you go to court and bring an enforcement action, it raises the stakes for. . . Disagree. Subpoena enforcement action. Subpoena enforcement action, yes. If you go to court and bring a subpoena enforcement action, it raises the stakes for the subpoena recipient because there's real penalties for noncompliance with at least a subpoena compliance order that the SEC. But there's also a risk to the SEC because it could be that in enforcing, in ruling on that subpoena, the court would have to determine whether or not that subpoena had any legitimacy. And so what you're doing by never bringing the enforcement action is, I guess you're saying I'm not raising the stakes for the subpoena recipients, but you're also never allowing your agency action to gain any degree of judicial review. And so it seems like when this amount of time goes on, it raises real questions as to why hasn't the SEC ever sent its subpoenas, because the subpoenas have to be related to a legitimate investor purpose or some standard like that. Why hasn't it ever subjected those to judicial scrutiny if it's needed? And if it's so legitimate, that should be effortless. Because I think this case actually demonstrates what the SEC is doing. As opposed to going directly to Gentile when he refused to comply with the administrative subpoenas, it went after information from affiliates. That might not be a problem if that was the next week or the next day or the next month. It's not so much the sequencing, right? But here we had continued controversy from a number of those affiliates too. So a lot of this delay, including back to 2016. Did you file any subpoena enforcement action? Because any single one would subject the scope of your investigation to judicial review. Did you give any one of them a subpoena enforcement action? What were the two subpoena enforcement actions in Miami? So we have the subpoena enforcement action that's over a year old or approximately a year old in Marin and Mintrade. And those were both filed after well over a year of refusal by Marin, for example, to comply with the subpoenas. And part of that was due to reasonable efforts to accommodate scheduling issues and delays like that. So after a year of trying to get those compliance from Miss Marin, for example, then we did go ahead and file those subpoena enforcement actions. And those are the actions. It sounds like the worst of both worlds. It sounds like you're going way too easy on people like that and then you're going too hard on this guy. I mean, you ask for documents and someone says, oh, I have a scheduling problem, and then you give them six months or a year to respond. I mean, I think the SEC generally tries to be fairly accommodating in how it schedules testimony. And so Mr. Gentile has also had comments. I guess I don't understand the lack of urgency here. It just seems that if you think somebody is running an unregistered broker-dealer, if you think – and it looked like in one of these cases you proved that someone was just stealing people's money, and Mr. Ford alluded to that. Is that right? I'm not sure which one you're alluding to. One of the principles of the Trader's Guide. Yeah. They were just sort of pretending to be a broker and stealing the money, right? Essentially, yes. So, I mean, that's a tremendous harm to the public. So where's the sense of urgency by the commission to shut these things down immediately and run into court and get orders? And, I don't know, it just seems like – and you've got somebody here saying, look, if you're going to indict me, you know, indict in quotes, just do it. Just, you know, I want my day in court. I mean, you need to either wrap it up or, quote, indict the guy, right? Well, so I think we did – I mean, there was urgency with the principles of Trader's Cafe in that those were done relatively quickly. But in the investigation, it wasn't an investigation of the two principles of Trader Cafe. SEC investigations are often about conduct, and so we have to look at the – we're looking at the broader conduct that was related to that. And it takes time to develop sometimes the players whose information we learn in the course of those two kind of fast ones, right? And so relatively – And I guess maybe I'm just not giving you guys the credit for how difficult this is, but, gosh, is the legal issue whether he's soliciting clients or not? The issue is whether he's engaged – yes, whether it's an unregistered broker-dealer engaging. So do you know who any of his clients are? Well, that's part of the problem. We're trying to figure out – we're basically trying to follow a trail of money, right? And so what the Trader's Cafe – But do you know who any of Gentile's clients are? Mr. Ford just admitted approximately half his clients are U.S. citizens. Do you know the names of any of them? I do not. The investigators may, but I do not necessarily. I mean, when I say you, I mean the commission. I could – I would not be able to represent what the investigators know. It just doesn't seem – I don't know. The guy's got to have ledgers. I would think you get the names of the customers from Mintrade or Shortrade or whatever, and then you start, you know, putting people under deposition. How did you come to be a client of Guy Gentile? I understand. Well, he sent me an email, and I – oh, now we've got solicitation. Let's prosecute the guy. And those are all reasonable investigative tools. How hard is that, right? That sounds like – I don't know. It just sounds like junior associate stuff. It doesn't sound like senior partner stuff. I mean, I think those are all – Basic fact development, right? I think these are reasonable investigative steps to take, but those are in the discretion of the commission and its investigators, right? And so what the commission – And you want to tell us then the discretion of the commission includes to sit on its hands with respect to this guy and do nothing. So we could be here in 2025, and it's, you know – I mean, you already, you know, blew the statute of limitations once on him because, you know, he was cooperating, right? Well, part of the problem here is that what Traders Cafe is looking into was not just the stuff that happened in 2013, but it's also the ongoing information. And so what the Traders Cafe did for us is it created – we've developed information so far that essentially creates a trail of money, right? So that doesn't necessarily immediately give us names, right? So following that trail of money, which is – it's an information that Mr. Ford alluded to, is that Sure Trader had an account, right, with Traders Cafe, and that money from Sure Trader went to one of Mr. Gentile's affiliates, Miss Marin, and her company, Mink Custody, right? And so we have to follow that trail of money, and that's what we have been doing, and that's why there are two enforcement – sorry, subpoena enforcement actions in Miami. And while we certainly don't want investigations to go on forever, it takes some time to develop the factual information when you're following the trail of money. But what I think the primary issue, though, before this court is Judge Lawrence's decision, which is whether Mr. Gentile is entitled to go into an entirely separate court, the New Jersey court, in order to enjoin the entirety of an ongoing investigation. Well, he would go into Miami court if he tried to enforce a subpoena against them there, right? And he has other options, one of which he's clearly exercising, which is to work with his affiliates in order to have them vindicate his rights, right? But he has no mechanism directly to challenge the action, right? He – the subpoena – Unless you first enforce the subpoena against him. No, he is allowed – he can attempt to permissively intervene in the subpoena enforcement actions in Miami, and in fact he tried to do so. He was denied. He was denied, and he was denied for several reasons, but he – you know, while he has that option – What were those reasons? The reasons primarily were timeliness, right? It was untimely, according to the magistrate judge's report. The subpoena enforcement actions were filed in February, and I think, at least in the Marin case, the intervention came in April, which was after an evidentiary hearing had already occurred. In addition, at least in the Marin case, and I believe in the Mintreatis case as well, the courts found that Mr. Gentile's interests were being adequately represented by the person who was in front of them. Ms. Marin, for example, is asserting many of the same complaints about the former investigation that Mr. Gentile was asserting in the New Jersey court. So, to our question, why don't you just enforce the subpoena against him, giving him a way to challenge the investigation? Your answer is, that's our discretion. That's our discretion, and I think it's a reasonable investigative approach to get information from other parties around someone who you're interested in. Okay, that approach makes a lot more sense if you never subpoenaed him, right? If you say, okay, we're going to find out about everyone else, and then we're going to come for our target or whatever word that you want to call Mr. Gentile. But when you subpoena him first, and then you say, okay, now we want to get everything else from the rest of the world, and maybe later we'll go and force, that really undermines the notion that this was a sound exercise of discretion as to when you would do it and when you wouldn't do it, because you made a decision that you wanted it earlier, you just didn't want it so bad as to subject the entire light of your investigation to some degree of judicial scrutiny through an enforcement action. And that's hard. I understand that, but I also think it's a reasonable investigative technique when you get results from one party. It doesn't seem particularly reasonable to subpoena someone without the need to then say, I actually want those documents. Why do you subpoena him then if you don't want to enforce it for years? Well, I also think part of what you're presupposing is that, to use your word, that Mr. Gentile was a target. Right, I don't know. We don't use that term, and part of that is because the investigations aren't necessarily focused on misconduct by person A, person B. We're trying to figure out what happened when this money that went from Trader's Cafe, right, through Sure Trader to Marin. We're trying to figure out what that money went when we're concerned about the misconduct of Trader's Cafe, folks we've already taken care of, but are also concerned about how... Why did you try to enforce it against Mintrade? Why did you successfully enforce it against Mintrade but not even try against Gentile? Because at this point, our investigators made a decision that they wanted to go after that information first. It gets right back to Judge Phipps' question, then why did they subpoena Gentile? I think the whole panel is with you on the notion of going around the people that you think are at the nucleus of the misbehavior because you want to get all the information so you can catch them when they start lying, and you want to roll up the cooperators. That makes perfect sense. We're with you on that, but that's not what was being done. Four years ago, it's not necessarily as clear what Gentile's role was, whether he was that central nucleus. So he could be, without getting into the non-public aspects, there are a number of different things that were being looked at. Can I just ask you one question? Sure. When there was an effort to have, and this is my ignorance of the record, so it's probably pretty basic, but when Gentile tried to permissively intervene in Florida subpoena enforcement actions, did the SEC oppose? We did, because he failed to meet the standard under Rule 24B of the Federal Rules of Civil Procedure. Okay. Now, you realize that maybe if you would have just said, ah, permissive intervention, it's a pretty low standard, it's not mandatory intervention, we probably wouldn't be here today because he would have had a chance to challenge everything and come in and raise all his arguments, and we wouldn't be talking about whether he had a waiver of sovereign immunity or not, he would have had his day in court. And so what in some ways is most compelling about his reading of the waiver of sovereign immunity is because he said, I didn't have that. How do I get it? If permissive intervention would have been, if he didn't object to it, said, sure, come on in, he has his day in court, and probably the need for this action evaporates. Well, I understand that that would have been one choice, but part of the problem here was that we also had the principle of the fact that he was using a different court, a New Jersey court, to try and join an entire investigation. So we were going to handle this one on its face as well. If I can make one, I know my time is up, but there's just one more point, just kind of responding. Which came first, this action or the Miami subpoena? The Miami subpoena action was on the 2nd of February, and this one came on, two days later, on the 4th. I was just going to point to the, there was a question earlier about Section 702. Section of 702 was amended in 1976, and I think we've cited actually portions of the legislative record that indicate 702 was amended in 1976, which kind of gives a little more context about when that section is relevant. Do you want to respond to what Mr. Ford said about that, that he claims to have read it, its initial iteration, and it included this language? I did not read the 46 version of that. I just knew that it was amended in, 702 was amended in 1976, so I'm not sure I could directly address that. Okay. Any other questions? Anything else? Okay, thank you, Mr. Ferguson. Rebuttal, Mr. Ford? Can we start with the factual question of whether this, the SEC has a client list or some number of your client's clients? Yeah, thank you, Judge, and I certainly don't, don't blame Mr. Ferguson at all, because I understand he's not the line assistant, but the facts that were being articulated up here weren't just sort of slightly wrong, but they were just not even close, and let me try and clear everything, and I don't say that sort of lightly. First off, the SEC in this investigation is working with the Bahamian Securities Commission. We know that for a fact because we've seen, because he's gotten, so to be clear, while it's in the Bahamas, the Bahamas has its own Securities and Exchange Commission, which does a very nice job of regulating its entities, and he is consistently receiving requests from the Bahamian Securities Commission indicating that they are originating with the SEC, and the whole reason I think that with the 50% of U.S. clients, that's a number that comes from the SEC. That's, I mean, I admitted it because, actually, I don't even, the SEC has told me that, and I sort of suspect that it might be correct, but so that, so first off, the SEC in Miami, The point is that the SEC wanted to find out if your client is soliciting people, they can go directly, if they wanted to, to those, that client list. And we know that they have been going to clients, because clients get back to our guy, and everyone says, because as it turns out, he really hasn't been soliciting U.S. clients. He has a website that people find because you can get slightly better terms in the Bahamas. All right, then if you're getting information from your clients, if you're getting information from your affiliates, whether it's Marin, or Mintrade, or whatever, you're not totally in the dark. If they, I guess what I'm trying to ask is, and I don't want it to sound cavalier, though it might, what's the big deal if they've got this, this long-standing formal order of investigation that has gone nowhere? What's the big deal? It's a huge deal. It's a life-changing deal. Why? Because the broker-dealer is now shuttered, and the reason why the broker-dealer is shuttered is because, and we put some of this in the complaint, although it's continued. Your client's not shuttered, right? No, but the business that he built since 2012, which was his business, that was his livelihood, it was the only thing that he could do, and what's been happening. So, and you're talking about Mintrade, SureTrade? SureTrade and Mintrade, the broker-dealer. That's correct, yeah, that's correct. But getting the SEC to enforce an order against you, a subpoena order against you now, or to issue a new FOI, that's not going to bring SureTrade or Mintrade back, right? It's not. Okay, so then that's not really the issue here unless you're going to bring some kind of civil case for the shuttering of the broker-dealer. If I could, I would. I don't know if I can figure that one out. All right, so that's in the past. Yeah, it is. So where do we go from there then? I think this investigation into Genteel under the Traders Cafe should be found to be invalid, right? And if they want to go because they have found some evidence of a securities violation, they can go and get a new one and start a new one,     but in order to do this, in order to get all the information that you need to get the information that you need to get the information that you need to get all the relief that you want, and I think you've made the case for why your client wants that. You're suing a federal agency. You and your client have clear issues with the scope, the breadth, the power of a federal agency. That's reality right now, but one of the things  the scope, the breadth, and the power of the federal agencies are the limited waivers of sovereign immunity that are the barrier to suing a federal agency. And I think you're suing them. And so I take it that you're only relying on the APA's barrier, waiver. You don't identify another waiver. We talked a little about Tucker Act or Federal Tort Claims Act. You're only relying on the APA 702 waiver, and then you've got to get, you've got to find an exception to that, and it sounds like in light of Heckler v. Cheney, this is just investigatory and prosecutorial, and that is Supreme Court telling us that agency decisions in that ilk are committed to agency discretion by law outside the waiver, and regardless of whether that's fair, right, or good, that is the statutory construct that we've had with us since 46. And I actually agree with just about everything that you said, and I understand the line that I'm walking here, and that's why I'm sort of really focusing on the facts here and saying, and particularly on this idea of the formal order of investigation being so completely unrelated. But you realize that we're abutting Heckler v. Cheney. Heckler v. Cheney doesn't talk about formal orders of investigation, and before you know it, if the waiver is changed to allow anyone to sue a federal agency who lacks a formal order of investigation or wants discovery into whether there's a formal order of investigation, every SEC branch office, every U.S. Attorney's office is going to be surrendering files all over the place, and certainly that would be a novel holding. Yeah, but I could agree. Here's the thing. We can really walk down a long path with the SEC, which is to say, of course, if the SEC goes and gets a formal order of investigation, they're off to the races, and for the first few subpoenas, or even however long, the target, maybe they don't have a right for the reason articulated, which is like, look, we want to build up our case against the target. I don't think that's an unreasonable position. I think that's a reasonable position here, though, and this is another factual error. Remember, they, and this is why I pointed out in the beginning, the SEC staff attorney in 2016, it's in an email, it's in the record, saying, you know, we're just about done with the investigation. We just need guys, you know, information, testimony, we can wrap it up. That was long before mink trade. Mink trade subpoena comes out, I think, in 2019. It's three years later. So we don't have, and again, I'm going back to, this case is so unusual. So it sounds like the factual, the thing that you're really saying that makes this case factually unusual is the fact that you, after all this has gone on, you haven't, your client hasn't had an opportunity for judicial review because if you would have brought an enforcement action against him, he could have had judicial review. Maybe a court would have said, guess what? This is all well and good. So sorry for the client, but clean bill of health for this subpoena and your client has to play ball. But what you're saying is because the SEC in its investigatory discretion apparently didn't bring that action, now you can bring an action to challenge the remainder of its investigatory and    and heckler v. Cheney. What's the legal basis for that? Well, the legal basis for that is that the S.E.C. doesn't have the discretion to bring this action. So what's the basis for your assertion that you can bring this action? I think that the discretion and maybe sort of my reading of it is that the discretion to investigate kicks in when the agency follows its own rules, right? And under its own rules, it's 202.5 that says if you want to conduct an informal investigation, just ask people for documents, you don't need to go to the commission for that. You can just do it as an S.E.C. staff attorney. If you want to go to the federal courts and use formal process and have a formal investigation, you have to go to the commission and present some minimal evidence of a violation. Okay. Okay. And without that, the discretion doesn't kick in and that's why I keep saying if they did it, I'd be done. So, let me just try to put a fine point on this to make sure that I understand. The APA in its cause of action is currently codified at 5 U.S.C. 706 allows someone to sue an agency for abuse of discretion. But, in its waiver, it says you cannot sue for items that are committed to agency discretion. And so, I guess what you're saying is I'm suing for something that given the guidance that the S.E.C. already has is something that's not truly committed to its discretion. It already exercised its own guidance. Now, what I'm doing is I'm bringing an abuse of discretion claim that is within the waiver because you haven't followed your own guidance in your investigation. Thank you, Judge. I could not have said that any better. That's exactly my position. There you go. Thank you, Mr. Ford. Thank you. Thank you, Mr. Ferguson. We'll take the matter under review. Thank you.